UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANDREW LLOYD WILLS,

            Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.

_____

**DECISION AND ORDER**
19-CV-428S

      1.      Plaintiff Andrew Lloyd Wills brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his application for disability insurance benefits under Title II and Title XVI of the Act. (Docket No. 1.) The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

      2.      Plaintiff protectively filed his application with the Social Security Administration on February 25, 2016. (R.[1] at 170.) Plaintiff alleged disability beginning on December 5, 2015, due to brain tumor cancer grade 2, loss of concentration, dizziness, depression, panic attacks, and seizures. (R. at 71-72, 216.) Plaintiff's application was denied, and Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ"). On March 22, 2018, ALJ Roxanne Fuller held a hearing, at which Plaintiff, represented by his attorney, appeared and testified. (R. at 47-68.) Vocational Expert Lisa Atkinson also appeared and testified by telephone. At the time of the hearing, Plaintiff

_____

[1] Citations to the underlying administrative record are designated as "R."

was 49 years old, with a twelfth-grade education and prior work experience as a foreman, assistant manager, and pharmacy technician. (R. at 82, 217.)

3.     The ALJ considered the case *de novo* and, on April 17, 2018, issued a written decision denying Plaintiff's application for benefits. (R. at 22-41.) On February 7, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1.) Plaintiff then filed the current action on April 2, 2019, challenging the Commissioner's final decision.[2]

4.     Plaintiff moved for summary judgment, and Defendant moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.[3] (Docket Nos. 8, 12.) Plaintiff did not file a response to Defendant's motion. This Court took the motions under advisement without oral argument. For the reasons that follow, Plaintiff's motion is granted, and Defendant's motion is denied.

5.     A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v.

---

[2] The ALJ's April 17, 2018, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

[3] This Court will consider Plaintiff's motion for summary judgment as a motion for judgment on the pleadings under Rule 12(c). See Kelly v. Saul, No. 6:18-CV-06431-MAT, 2019 WL 6842970, at *1 (W.D.N.Y. Dec. 16, 2019) ([T]he Court considers dispositive motions in Social Security cases pursuant to Fed. R. Civ. P. 12(c), for judgment on the pleadings.")

Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

6. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

8. The five-step process is as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

9.       Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(a)(4); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10.      The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful

4

activity since December 5, 2015. (R. at 24.)  At step two, the ALJ found that Plaintiff has the severe impairments of brain cancer, polyneuropathy, obesity, and adjustment disorder with mixed disorder and depression. (Id.) At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (R. at 24-27.)

11.     Next, the ALJ found that Plaintiff retains the residual functional capacity ("RFC") to perform sedentary work, except that: he can never climb ladders, ropes, or scaffolds; he can have no exposure to moving mechanical parts; he cannot operate a motor vehicle; he cannot have exposure to unprotected heights; he is able to perform routine and repetitive tasks; and he is able to work in a low stress job with only occasional changes in the work setting. (R. at 27.)

12.     At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (R. at 39.) At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Id.) Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 40.)

13.     Plaintiff argues that the ALJ's opinion is not supported by substantial evidence because the ALJ failed to give proper weight to the opinion of Dr. Ajay Abad, and the ALJ did not properly assess Plaintiff's credibility. (Docket No. 9 at 8, 23.)

14.     Plaintiff first argues that the ALJ erred by failing to properly consider Dr. Abad's opinion. Defendant argues that the ALJ properly gave Dr. Abad's opinion little weight due to its inconsistency with other significant medical evidence in the record. Defendant's argument is unavailing.

15.     An ALJ is required to consider "every medical opinion" received. 20 C.F.R. § 416.927(c).  A treating physician's opinion is entitled to controlling weight in cases where that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d). When a treating physician's opinion is not consistent with the rest of the record, it does not sustain controlling weight. See Domm v. Colvin, 579 F. App'x 27, 28 (2d Cir. 2014); Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam).

16.     If the ALJ decides the opinion is not entitled to controlling weight, she must determine how much weight, if any, to give it. In doing so, she must "explicitly consider" factors such as: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam) (citing Burgess, 537 F.3d at 129 (citing 20 C.F.R. § 404.1527(c)(2))). At both steps, the ALJ must "give good reasons in [its] notice of determination or decision for the weight [it gives the] treating source's [medical] opinion." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (quoting 20 C.F.R. § 404.1527(c)(2)).

17.     A failure to explicitly consider every factor does not necessitate remand, as long as the reviewing Court is able to determine that the ALJ considered these factors. Estrella v. Berryhill, 925 F.3d 90, 96 (2d Cir. 2019) ("failure to 'explicitly' apply the Burgess factors when assigning weight ... is a procedural error" but does not require remand if "a searching review of the record assures [the court] that the substance of the treating physician rule was not traversed").

18.    Here, Plaintiff suffered from a seizure in December 2015, which led to the discovery of a brain tumor. (R. at 270, 384.) Plaintiff underwent surgery to remove the tumor in January 2016. (R. at 385-86.) He then underwent radiation therapy and was declared clinically stable as of October 25, 2017. (R. at 618.) He suffered a second possible seizure in December 2017. (R. at 636-640.) He suffered from difficulty concentrating and fatigue after his cancer treatment. (R. at 488, 533-34, 614). Clinical tests of his memory and concentration were largely normal, although he showed some "cognitive slowing." (R. at 489, 494.)

19.    The record contains numerous treatment notes and opinions by Dr. Ajay Abad, Plaintiff's neuro-oncologist at Roswell Park Cancer Institute. (R. at 505, 526, 534-35, 559, 579, 604, 614, 618, 763). In a treatment note from April 28, 2017, Dr. Abad noted, "[Plaintiff] previously worked as a roofer until the time of his injury. He had a generalized seizure, he is no longer able to be up on a roof, … climb ladders, or work with any type of power equipment." (R. at 579.) In a treatment note from October 25, 2017, Dr. Abad opined that Plaintiff" is able to do some activities a few hours at a time, but his endurance is decreased, he tires more easily, and typically will have at least one nap a day." (R. at 614.) He then stated that Plaintiff was "disabled," because "odors, temperature or even fatigue after working a certain amount of hours could lower his seizure threshold." (R. at 614.) On October 30, 2017, Dr. Abad opined that Plaintiff was "[a]ble to do some activity intermittently, for a few hours at a time" but "this is neither predictable or consistent." (R. at 618.) In a medical source statement from March 9, 2018, Dr. Abad opined that Plaintiff was "disabled" because of cognitive limitations and seizure risk for the rest of his life. (R. at 781.)

20.     The ALJ gave limited weight to Dr. Abad's opinions, finding them inconsistent with his own examination findings, and with the other medical evidence in the record. (R. at 37.) Plaintiff argues that the ALJ should have given controlling weight to Dr. Abad's opinion. (Docket No. 9 at 4-7.) Defendant argues that the ALJ properly considered Dr. Abad's opinion. (Docket No. 12-1 at 5.)

21.     It is unquestionable that Dr. Abad qualifies as a treating physician, given the number of times he treated Plaintiff. The ALJ gave limited weight to Dr. Abad's opinions because she found them inconsistent both with his own findings and with other opinions. She focused on two areas of inconsistency: Plaintiff's lack of seizures and his apparently intact cognitive abilities. As to seizures, she noted that Plaintiff had only one confirmed seizure, in December 2015. She considered that the episode for which he went to the hospital in December 2017 was not really a seizure, because "a CT scan revealed … no intracranial mass, hemorrhage, or acute abnormality," and an MRI of the brain "revealed no enhancing lesion." (R. at 37). Because the record, as the ALJ read it, did not show evidence of seizures, the ALJ discounted Dr. Abad's concerns.

22.     However, the ALJ was comparing different things when she found this inconsistency.  The ALJ is correct that Plaintiff did not suffer many seizures over the relevant period. But Dr. Abad's concern was the risk of seizures. As part of his assessment of Plaintiff's seizure risk, Dr. Abad noted that fatigue could contribute to a risk of seizures. (R. at 614.) ("Any extremes of temperature, odors, or even fatigue after working a certain number of hours could lower his seizure threshold.") Given this, Dr. Abad took seriously Plaintiff's reports that he was experiencing fatigue, and thought that this would limit how long Plaintiff could work. The ALJ was justified in not accepting Dr.

Abad's opinions as to whether Plaintiff was disabled. <u>See</u> 20 C.F.R. 404.1527(e)(1) (reserving for the Commissioner the responsibility "for making the determination or decision about whether [a claimant] meet[s] the statutory definition of disability"). But apart from that impermissible conclusion, Dr. Abad clearly opined that seizures were a risk, and that fatigue could contribute to that risk. These opinions are not contradicted by the fact that Plaintiff did not have numerous seizures while being treated by Dr. Abad.

23.　　Further, Dr. Abad's concerns about fatigue and seizure risk are not contradicted by Plaintiff's "essentially normal" mental and physical examination results. (Docket No. 12-1 at 9.) Remembering numbers and concentrating are different issues from fatigue and the ability to maintain effort over time. Plaintiff's ability to remember sequences of numbers shows that he had some concentration and memory abilities, not that he had the energy or ability to work for an 8-hour day without resting. Thus the ALJ's rejection of Dr. Abad's opinions because they are "contradicted by the rest of the record" is not supported by substantial evidence.

24.　　This Court further finds that ALJ failed to explain her reasoning in the weight she gave Dr. Abad's opinions. It is error for an ALJ not to explain her reasons for disregarding a claimant's treating physician. <u>Newbury v. Astrue</u>, 321 F. App'x 16, 17 (2d Cir. 2009) (citing <u>Snell v. Apfel</u>, 177 F.3d 128, 133 (2d Cir.1999)) ("Remand is appropriate where the ALJ fails to provide good reasons for not crediting the opinion of a claimant's treating physician.")

25.　　Here, it is not possible to determine whether the ALJ considered Dr. Abad's ongoing treating relationship with Plaintiff or his position as a neuro-oncologist—seemingly a specialist—at Roswell Park. The ALJ simply gave Dr. Abad's opinion little

weight after deeming it inconsistent with the record. The ALJ thus did not give the "good reasons" required by the regulations. Because this Court cannot follow the ALJ's reasoning in the weight she gave Dr. Abad's opinions, her decision is not supported by substantial evidence.

26.     Additionally, Plaintiff argues that the ALJ improperly assessed his credibility. Because remand is warranted on other grounds, this Court will not consider this argument here.


IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 12) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:      January 31, 2020
            Buffalo, New York


                                                    s/William M. Skretny
                                                   WILLIAM M. SKRETNY
                                                  United States District Judge